Pasquale PAVIA

v.

Marvin E. HOGAN, Warden, United States Penitentiary, Atlanta, Georgia.

Civ. A. No. C74–2524A.

United States District Court, N. D. Georgia, Atlanta Division.

Dec. 31, 1974.

Pasquale Pavia, pro se.

John W. Stokes, U. S. Atty., J. Robert Cooper, Asst. U. S. Atty., Atlanta, Ga., for the Government.

ORDER

EDENFIELD, Chief Judge.

■ Petitioner, a federal prisoner incarcerated in the Atlanta federal penitentiary, seeks leave to file in forma pauperis a civil action which he has styled "Motion to Dismiss Detainer-Warrant." It may be so filed and the court will treat the matter as an action under the Civil Rights Act, 42 U.S.C. § 1983, and as a petition for declaratory relief under 28 U.S.C. § 2201, and for relief in the nature of mandamus under 28 U.S.C. § 1361.

Petitioner is currently serving a sentence of ten years imposed on January 11, 1971 in the United States District Court for the Southern District of New York. Subsequently, the Parole Division of the State of New York Department of Correctional Services lodged a detainer-warrant against him alleging violation of parole from a prior conviction in New York. Petitioner states that he immediately sought to have the remaining portion of the New York sentence to run concurrently with the federal sentence. His request was denied and he was told that "the Board of Parole would take no action concerning what should be done about the balance of time that you owe on your state sentence until Federal Authorities advise that you are available for return to this State, should that be the decision of the Board of Parole."

Again on August 12, 1974, petitioner wrote to the Commissioner of the New York Department of Correctional Serv-

ices, complaining that he had had no opportunity for a parole revocation hearing. The state replied that the Board of Parole had not made a final decision in petitioner's case and quoted the language (cited above) from the 1971 reply to petitioner's request, adding, "Should you be ordered returned to a state correctional facility you would, of course, be entitled to a revocation hearing."

Petitioner alleges that the existence of the detainer lodged against him seriously affects the conditions of his present confinement in that it prevents him from being transferred to a facility closer to his home, denies him the opportunity of participating in a pre-release program available to other prisoners, and denies him access to other rehabilitative programs. Petitioner contends that the parole violator detainer is inconsistent with his right to due process under the theory of Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed. 2d 484 (1972). This court agrees.

■ Jurisdiction exists in this court because the respondent, federal custodian. of the petitioner, is located in the Northern District of Georgia. Petitioner may challenge the legality of the detainer lodged against him (and the effects of that detainer upon his federal confinement) even though the expungement of that detainer would not result in his immediate release from prison. *See* Braden v. 30th Judicial Circuit Court, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973); Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968). Furthermore, the alleged constitutional deprivation here relates to the conditions of petitioner's confinement, cognizable under 42 U.S.C. § 1983. Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971).

The issue at the heart of the petition is whether the punitive effects of a detainer upon a prisoner's current confinement, placed upon him by his federal custodian because of a pending parole revocation in a state proceeding, may re-main in force when the state refuses to finally determine the question of revocation until the prisoner is released from his current confinement. "The constitutional question posed is whether the due process requirements of Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), as applied to parole revocation require a timely hearing and disposition by the parole state when the parolee is in the custody of another [governmental unit]." Cooper v. Lockhart, 489 F.2d 308 (8th Cir. 1973).

■ It is now firmly established that due process is required in parole revocation proceedings. Morrissey v. Brewer, *supra*. *Morrissey* declared that due process required that there be, first, a reasonably prompt informal inquiry near the place of the alleged parole violation or arrest to determine if there is probable cause to believe that there has been a violation of conditions of parole. Petitioner here, however, is not challenging his lack of this "probable cause" hearing for, unlike the petitioners in *Morrissey*, conviction of a crime while on parole is the parole violation in this case. Petitioner here thus had full notice of the violation alleged and his guilt of the crime has been proven in a court of law beyond reasonable doubt. This, however, does not mean that a revocation hearing may be dispensed with for, as the Supreme Court pointed out in *Morrissey*, a revocation decision is a two-part process. "The first step in a revocation decision thus involves a wholly retrospective factual question: whether the parolee has in fact acted in violation of one or more conditions of his parole." 408 U.S. at 479, 92 S.Ct. at 2599. The preliminary hearing mandated by *Morrissey* is meant to resolve that question. That the mere occurrence of a parole violation was clear here did not, however, relieve the state authorities of the need to address the second question of the revocation decision: "Should the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation?" 408 U.S. at 480, 92 S.Ct. at

2599. At such a "second-step" hearing the petitioner might well introduce evidence of mitigating circumstances to show that his violation does not warrant revocation. As it is not a foregone conclusion that conviction while on parole will automatically result in parole revocation and reincarceration, *Morrissey's* clear implication is that "a conviction during parole may alter the content of the revocation hearing, but it does not dispense with the requirement that such a hearing be promptly held." Sutherland v. District of Columbia Board of Parole, 366 F.Supp. 270, 272 (D.C.D.C. 1973). *Contra* Thomas v. United States Board of Parole, 354 F.Supp. 273 (D. Kan.1973).

The issue raised in this case is not one of first impression, but the courts that have addressed the issue thus far have not reached uniform results. The Eighth Circuit Court of Appeals held that the custodial state involved in Cooper v. Lockhart, 489 F.2d 308 (1973), denied the petitioner due process by continuing the effects of a detainer placed upon him solely on the strength of a request for him made by a sister state. The court found that the detainer had the effect of rendering the prisoner ineligible for many rehabilitation programs and benefits, and ordered the custodian to discontinue the detainer in the event that the detaining state did not, upon reasonable notice, request that the prisoner be made available for a prompt disposition of the parole revocation proceeding. *Cf.* Caffey v. Wyrick, 377 F. Supp. 160 (W.D.Mo.1974). Similarly, Judge Gesell held in Sutherland v. District of Columbia Board of Parole, *supra*, that a federal prisoner had a right to a prompt parole revocation hearing on a detainer warrant, and that the parole board could not wait until the prisoner's

current sentence had been served before holding such a hearing. The court found the five-month delay to constitute incurable error and ordered the parole board to cancel its warrant as well as ordering the prison authorities to expunge the warrant from the prisoner's record. The District Court of the District of Columbia ordered the same relief again in Jones v. Johnston, 368 F. Supp. 571 (1974), saying that the petitioner had a right to a revocation hearing within a reasonable time despite the fact that the alleged parole violation was petitioner's conviction of a crime while on parole. The hearing was deemed to be required by due process "to provide a forum for the parolee, at the least, to introduce evidence of mitigating circumstances where the violation itself is conceded." 368 F.Supp. at 573–574. *See also* Marchand v. Director, United States Probation Office, 421 F.2d 331, 335, n. 5 (1st Cir. 1970).

Most recently, the District Court for the District of Columbia has again addressed the issue and held that a delay of over one and one-half years after taking a prisoner into federal custody for a second conviction without affording a parole revocation hearing denied the petitioners due process. The court ordered the federal detainer-warrants quashed and removed from the petitioners' files. Fitzgerald v. Sigler, 372 F.Supp. 889 (D.C.D.C.1974).[1]

The issue is likewise not a novel one in the Fifth Circuit. The Fifth Circuit has repeatedly held that a parole violator warrant must be issued before the expiration of the maximum term of sentence for which parole was granted, but need not be served within that time and may be held in abeyance while an intervening sentence is being served. In oth-

---

1. Petitioners in *Fitzgerald* contended inter alia that the failure to grant them a speedy revocation hearing affected them adversely in that they were consequently denied access to certain rehabilitative programs. The court found this claim to be moot since the parties stipulated that, since the case had been taken under advisement, the policy of the District of Columbia Department of Corrections, which policy denied participation in certain rehabilitative programs to prisoners against whom detainers were lodged, had been superseded. This court, on the other hand, has no knowledge that the parallel policy in the Atlanta federal penitentiary is not still in effect.

er words, it has not been deemed improper for the Parole Board to delay the revocation hearing until the expiration of the later sentence. Landman v. Carlson, 463 F.2d 218 (5th Cir. 1972), cert. denied 410 U.S. 985, 93 S.Ct. 1512, 36 L.Ed.2d 182 (1973); Galloway v. Attorney General, 451 F.2d 357 (5th Cir. 1971); Cox v. Feldkamp, 438 F.2d 1 (5th Cir. 1971), and cases there cited. More recently in Cook v. Attorney General, 488 F.2d 667 (5th Cir. 1974); Burnett v. United States Board of Parole, 491 F.2d 966 (5th Cir. 1974), and Trimmings v. Henderson, 498 F.2d 86 (5th Cir. 1974), it was held that the parole board need not grant a *Morrissey*-type revocation hearing to a parolee at the commencement of a new prison sentence imposed for a crime committed while on parole where a parole violator warrant has been issued but returned unexecuted pending completion of the intervening sentence.

This court respectfully concludes, however, that Morrissey v. Brewer, *supra*, as interpreted by the United States Supreme Court in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), mandates a different result from that reached in the Fifth Circuit cases cited *supra*. *Wolff* held that certain minimal due process requirements must be observed in prison disciplinary proceedings, though not the full range of procedures mandated in *Morrissey*. This clarification of *Morrissey*'s application to prisoners still in the penitentiary as well as those who are at liberty on parole would seem to undercut the distinction made in Sexton v. Wise, 494 F.2d 1176 (5th Cir. 1974). *Sexton* held that prison officials need not provide notice and hearing to a prisoner who has been granted a future date for parole but who has not yet been released. In approving the validity of summary rescission of the parole, the court reasoned that since the prisoner was never officially paroled, the rescission did not amount to a "revocation": "Until a parole is finalized, no constitutional pro-

tections associated with a parole *revocation* embrace the intended parolee." At 1178.

■ The *Sexton* inmate/parolee distinction is, however, no longer viable after Wolff's extension of *Morrissey* to embrace prisoners who face internal disciplinary proceedings only indirectly related to the parole release decision. Although *Wolff* did not extend all of *Morrissey*'s procedural protections to the inmate, notice and hearing are among the minimum due process requirements applicable to internal disciplinary proceedings. *A fortiori* a reasonably prompt hearing should be available to a parole violator to present evidence of mitigating circumstances or of rehabilitative potential relevant to the issue of revocation even if he concedes the violation itself. This should be the case whether the parole violator has been arrested on a violator warrant, as in *Morrissey*, or whether he is currently confined pursuant to the conviction which constituted the parole violation. "[T]hough his rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime." 418 U.S. at 555, 94 S.Ct. at 2974.

If *Wolff*, then, has invalidated the Fifth Circuit's inmate/parolee (or inside/outside) distinction in *Sexton*, it likewise invalidates the Fifth Circuit's similar distinction in Cook v. Attorney General, *supra*. *Cook* drew a sharp line between a parole violator warrant which has been merely *issued* and one which has been *executed*. In interpreting the federal parole statute, 18 U.S.C. § 4205, the court held that the warrant need only be issued within the maximum term of the prisoner's original sentence, but that it need not be executed during that period. Rather, "the warrant may be held in abeyance while the parolee serves sentence under an intervening conviction (the occurrence of which prompted the issuance of the violators warrant) and may then be executed following com-

pletion of this intervening sentence." 488 F.2d at 670–671. The court pointed out that the availability of a revocation hearing is triggered by the execution of the warrant, not by the mere issuance of it, and that a warrant is not executed until the parolee is retaken and returned to federal custody pursuant to it. The court thus reasoned that since a parole violator warrant could not be *executed* until the prisoner was released from his intervening confinement in another jurisdiction, the prisoner could not become eligible for a revocation hearing until that time, when he could be *retaken* upon the warrant. This notion that the prisoner's rights under *Morrissey* hang in suspended animation until he has served his intervening sentence is simply not consistent with *Wolff's* rejection of the inside/outside distinction or with the larger importance of *Morrissey* itself.

■ Even, however, if *Cook* is still good law in the Fifth Circuit, this court does not feel bound by it in the case at bar as *Cook* and the other Fifth Circuit cases cited *supra* at 1383–1384 interpret the provisions of the *federal* parole law, 18 U.S.C. §§ 4205–4207, whereas the jurisdiction issuing the detainer warrant in the case at bar is the State of New York, not the United States. The applicable New York statute[2] does not at all speak in terms of the distinction found by the Fifth Circuit in the federal statute. It does not appear that New York requires the alleged parole violator to be retaken on an executed warrant and returned to the custody of New York before the right to a revocation hearing is triggered. Whether New York has

made a formal "declaration of delinquency" pursuant to the statute does not appear from the petition, but it would appear from the issuance of the detainer warrant itself that New York found "reasonable cause to believe" that petitioner has violated the conditions of his parole; petitioner should therefore have been afforded "the first available opportunity . . . to explain the alleged violation." This New York has failed to do, and, consequently, petitioner has been deprived, without due process of law, of the opportunity to participate in rehabilitative programs during his present confinement.

A revocation hearing is required in this case despite the fact that the parole violation itself has already been established by a court of law. Moreover, as the District Court for the District of Columbia perceptively pointed out:

". . . [D]elay in holding the hearing could substantially prejudice such a parolee. Not only might mitigating evidence be lost during the years of intervening incarceration, . . . but the parolee could be arbitrarily deprived of the opportunity to have his reincarceration, if ordered, run concurrently with the remainder of his intervening sentence. The maintenance of a detainer against an inmate whose parole will never actually be revoked has other undesirable effects, triggering an unnecessary loss of prison privileges and hampering rehabilitation by placing the parolee's future into a state of prolonged uncertainty." Sutherland v. District of Columbia Board of Parole, 366 F. Supp. 270, 272 (D.C.D.C.1973).

2. New York Correction Law, McKinney's Consol.Laws, c. 43, §§ 212(7) and 828 provide: "Whenever there is reasonable cause to believe that a person who is on parole or conditional release has violated the conditions thereof, the board of parole as soon as practicable shall declare such person to be delinquent. Thereafter, the board shall at the first available opportunity permit the alleged violator to appear personally, but not through counsel or others, before a panel of

three members and explain the alleged violation. Such appearance shall be either at an institution under the jurisdiction of the state department of correction or at such other place as may be designated pursuant to rules and regulations of the board. The board shall within a reasonable time make a determination on any such declaration of delinquency either by dismissing the declaration or revoking the parole or conditional release."

■ This court does not disagree with the Fifth Circuit's conclusion in *Cook* that the deprivation of prison privileges caused by the existence of the detainer is not "so great or so unreasonably related to the very existence of a detainer—based as it is in this case on a serious and incontestable parole violation—as to require that the revocation hearing be held at the *commencement* of the intervening sentence." 488 F.2d at 673 (emphasis supplied). *See* Lawrence v. Blackwell, 298 F.Supp. 708 (N.D.Ga. 1969). But this court does feel that the deprivations arising out of the existence of a detainer upon a prisoner's record and remaining in effect during a period of "prolonged uncertainty" until the intervening sentence has been fully served constitute a violation of the prisoner's constitutional right to due process of law. Morrissey v. Brewer, *supra.* Consequently, this court holds that due process requires that the parole revocation hearing be held within a reasonable time after the parole violator is taken into custody to serve the sentence on his intervening conviction.

■ This court established in Lawrence v. Blackwell, *supra,* and Weiss v. Blackwell, 310 F.Supp. 360 (N.D.Ga. 1969), guidelines to be followed by this court in cases of federal prisoners in the Atlanta penitentiary alleging a state's failure to grant them a speedy trial but suffering the ill-effects of state detainers on their records. The court recognized that Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), did not authorize a federal district court either to dismiss a *state* indictment for failure to give a petitioner a speedy trial, *compare* Sutherland v. District of Columbia Board of Parole, *supra,* Jones v. Johnston, *supra, and* Fitzgerald v. Sigler, *supra,* or to hold an independent hearing on the possible prejudice arising from delays in trial. These state detainer guidelines promulgated for use in speedy trial cases are also appropriate, *mutatis mutandis,* for use in parole revocation cases:

1. Federal prisoners have a right to a prompt parole revocation hearing on alleged violations of state parole conditions.

2. Prison authorities at the United States Penitentiary in Atlanta should promptly inform prisoners of the existence of state detainers lodged against them pursuant to state parole violator warrants.

3. A prisoner must make a demand for a parole revocation hearing to appropriate state authorities before he may come into this court for relief and, where possible, should give prison authorities a copy of his demand to keep in their files.

4. After making a demand on the state, a prisoner must wait a reasonable time for the state to act—at least 180 days or such lesser time as a state by law may provide for parole revocation hearings—before he can petition this court to release the restrictions flowing from the state detainers. Those prisoners who have already made such demands prior to the date of this order must wait a reasonable time from this date for their states to act—at least 180 days or such lesser time as a state by law may provide for parole revocation hearings—before they may petition this court to release the detainer restrictions at the prison.

5. After this above-mentioned time has passed with no state action toward securing a parole revocation hearing, the prisoner may petition this court to remove the prison restrictions imposed solely as the result of the detainers. If possible, the prisoner should enclose with his petition some proof of his demand on the states for a parole revocation hearing and a showing that the above-specified reasonable time for the states to act has passed; proof could be a dated copy of his letter to the state or a dated certified mail slip showing receipt of the prisoner's demand by the state.

6. At the hearing this court will decide if the state has made a diligent, good-faith effort to afford petitioner a parole revocation hearing within a reasonable time. Prison officials should not be called upon to make a determination of the reasonableness of a state's delay. The hearing will only consider the restrictions imposed at the federal prison under the state detainer, not the underlying allegations of state parole violations.

7. The court will strictly abide by these guidelines.

▮ Considering petitioner's action in light of these procedures, it is evident that petitioner has made a proper demand upon state authorities for a prompt parole revocation hearing. Some four years have passed since his original inquiry, and four months have passed since his most recent request. Accordingly, in the absence of the respondent's showing cause within 20 days why the relief requested should be denied, and in the absence of a specific date for a parole revocation hearing from the State of New York, by letter to this court, with copy to Warden Hogan, within 40 days from the date of this order, the court hereby orders dismissed all of the restrictions against petitioner flowing from the New York detainer, and also orders that all evidence of the detainer be physically expunged from petitioner's record.

If no specific information is furnished by the State of New York within the time prescribed, Warden Hogan may obtain a certificate to that effect from the court to post in petitioner's record. The Clerk of this Court is directed to address a copy of this order to William Cashel, Area Director, New York Department of Correctional Services, 314 West 40th Street, New York, New York 10018.