517 F.2d 1082
 Bobby Dean CLEVELAND, Appellee,
v.
Dr. P. J. CICCONE, Director, United States Medical Center
for Federal Prisoners, Springfield, Missouri, Appellant.
Lavell WHITTAKER, Appellee,
v.
Dr. P. J. CICCONE, Director, United States Medical Center
for Federal Prisoners, Springfield, Missouri, Appellant.
Charles Edward BESHERS, Appellant,
v.
Dr. P. J. CICCONE, Director, United States Medical Center
for Federal Prisoners, Springfield, Missouri, Appellee.
 Nos. 74-1420, 74-1430, 74-1476.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 14 and 15, 1974.
Decided June 10, 1975.
 
 Frederick O. Griffin, Asst. U. S. Atty., made argument for appellant.
 Patrick Glynn, Bd. of Parole, Washington, D. C., made argument for amicus curiae, Bd. of Parole.
 Raymond Conrad, Asst. Public Defender, Springfield, Mo., made argument for appellee.
 Charles Edward Beshers, filed typewritten brief pro se.
 Burt C. Hurn, U. S. Atty., Frederick O. Griffin, Jr., and Anthony P. Nugent, Jr., Asst. U. S. Attys., Chief, App. Div., Kansas City, Mo., filed typewritten brief for appellee.
 Before GIBSON, Chief Judge, CLARK, Associate Justice, Retired,* and WEBSTER, Circuit Judge.
 WEBSTER, Circuit Judge.
 
 
 1
 In 1973 this court held that a state prisoner had been denied due process of law when, prior to the opportunity for a hearing, his conditions of confinement were appreciably worsened as the result of a detainer lodged against him for a parole revocation pending in another state. Cooper v. Lockhart, 489 F.2d 308 (8th Cir. 1973).[1] Today, in these consolidated habeas corpus actions,[2] we hold that federal prisoners are entitled to reasonably prompt hearings on federal parole or release violation warrants and that the heretofore frequent practice of deferring such hearings until the expiration of an inmate's intervening sentence violates due process of law. A brief statement of the common events from which these appeals arise will place our holding in its proper factual context:[3]
 
 
 2
 The three named petitioners below were each incarcerated at the Medical Center for Federal Prisoners at Springfield, Missouri, at the time their respective petitions for habeas corpus relief were filed. Each was in the process of serving a sentence for an offense which, when committed, constituted a violation of the conditions of his parole or mandatory release granted prior to the expiration of an earlier federal sentence. Because the second offense constituted a parole violation, a parole violator warrant was lodged as a detainer against each named petitioner at Springfield. Execution of the warrant and a hearing on the charges underlying it, however, had been deferred in accordance with what appears to be a standard practice of the U.S. Board of Parole and the federal prisons acting as its agents, which regularly postpone parole revocation hearings until the completion of the inmate's intervening sentence.
 
 
 3
 Bobby Dean Cleveland, the petitioner-appellee in No. 74-1420, was the first of the named petitioners to seek relief in the Western District of Missouri.[4] His pro se petition for a writ of habeas corpus challenged the detainer lodged against him on due process grounds. Following the referral of the case by the District Court to the United States Magistrate at Springfield, the appointment of counsel from the office of the Federal Public Defender and evidentiary hearings before Magistrate Stewart, a report was filed with the District Court, recommending that the writ of habeas corpus be granted and that respondent Ciccone, Director of the Medical Center at Springfield, be directed to execute the warrant and schedule a release[5] revocation hearing with reasonable dispatch. This recommendation was predicated on the Magistrate's application of the principles enunciated in Cooper v. Lockhart, supra, to the facts before him. Thereafter, on the basis of the factual findings by the Magistrate which are not disputed in this appeal, the District Court, Honorable William H. Becker, Chief United States District Judge for the Western District of Missouri, entered final judgment granting habeas corpus relief and directing that Cleveland be accorded a revocation hearing on his violator warrant with reasonable dispatch. Dr. Ciccone appeals.
 
 
 4
 While essentially similar, the procedural histories of Whittaker v. Ciccone and Beshers v. Ciccone differ from that of Cleveland's case in three significant respects. First, both of these petitioners named the United States Board of Parole and federal officers as respondents, in addition to Dr. Ciccone, the Director of the Medical Center. Because he was dubious of the District Court's jurisdiction over the Board and the federal officials, Magistrate Stewart deemed Ciccone the only proper respondent. This fact becomes important in our jurisdictional analysis infra. Second, by the time these two petitions had been referred to Magistrate Stewart,[6] he was apparently familiar with the issues raised. As a result, he ordered Whittaker's and Beshers' cases consolidated and recommended that they be treated as a class action,[7] noting that although the District Court had twice before granted relief in such cases, "petitions continued to be filed on this question,[8] with the parties apparently insisting that this issue be decided on a case-by-case basis." Finally, unlike Cleveland, who had sought simply a prompt hearing on the charges underlying the violator warrant, Whittaker and Beshers each sought additional relief outright cancellation of the warrants. Judge Becker approved the Magistrate's recommendations, designated the litigation as a class action,[9] and ordered that parole revocation hearings be scheduled forthwith.[10] He declined to quash the warrants, however. Both Ciccone and the petitioners have filed appeals.[11]
 
 I.
 JURISDICTION AND MOOTNESS
 
 5
 Two preliminary issues must be resolved at the outset. The first is the power of the District Court for the Western District of Missouri to grant relief which appears to require some measure of participation by a party outside the jurisdiction of that court, the United States Board of Parole, which is headquartered in Washington, D.C. See Lee v. United States, 501 F.2d 494 (8th Cir. 1974); Ott v. United States, 326 F.Supp. 609 (W.D.Mo.1970). As noted above, Whittaker and Beshers had initially named the Board as a respondent, but the Magistrate deemed Ciccone the only proper respondent.
 
 
 6
 It is now well established that an appropriate forum for habeas corpus relief is the United States District Court having jurisdiction over the custodian against whom the petition for the writ is directed. Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973); Lee v. United States, supra; see Wilkins v. Erickson,484 F.2d 970 (8th Cir. 1973). The petitioners in the instant cases have sought such relief against Dr. Ciccone, their custodian at Springfield, in their challenge to the lodging of detainers upon them without the opportunity for a prompt hearing on the unexecuted warrants underlying those detainers.[12] As we have noted in cases involving state parole violation warrants, it is the immediate custodian who actually places the detainer on the prisoner, alters his conditions of confinement accordingly, and notifies the requesting authority upon the expiration of the inmate's present term. Cooper v. Lockhart, supra, 489 F.2d at 312. Indeed, under federal statute the Director of the Medical Center has the authority to execute parole violation warrants, 18 U.S.C. § 4206, the event which triggers the hearing process, 18 U.S.C. § 4207. Moreover, even though the court below may have lacked jurisdiction over the Board itself, it did have personal jurisdiction over the institutional parole officers of the Medical Center (caseworkers), who together with Dr. Ciccone can supply the relief in question. It is also important to note that in the past this circuit has permitted a prisoner to attack the action, or inaction, of the Board of Parole through a petition directed at the immediate custodian, where that custodian is acting as the Board's agent. Burton v. Ciccone, 484 F.2d 1322 (8th Cir. 1973). See also Barnes v. United States, 445 F.2d 260 (8th Cir. 1971); Brest v. Ciccone, 371 F.2d 981 (8th Cir. 1967). We therefore conclude that there are no jurisdictional defects in the judgment below.
 
 
 7
 Moreover, the designation of a class by the District Court relieves this court of the burden of following individual transfers of the named petitioners to other institutions during the appeal process, events which might otherwise raise jurisdictional problems or questions of mootness.[13]II.
 
 RIGHT TO A REASONABLY PROMPT HEARING
 
 8
 The starting point of our analysis must be the statutes governing the procedures in question and the now well settled rule that due process of law is required in parole revocation proceedings. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Cooper v. Lockhart, supra, 489 F.2d at 312.
 
 
 9
 Under the controlling statutes, if a warrant for the retaking of a prisoner who has violated his parole is executed, 18 U.S.C. § 4206, the unexpired term of his imprisonment "shall begin to run from the date he is returned to the custody of the Attorney General under said warrant * * *." 18 U.S.C. § 4205. A prisoner thus "retaken" "shall be given an opportunity to appear before the Board (of Parole), a member thereof, or an examiner designated by the Board." 18 U.S.C. § 4207. Two circuits have held that, since the operative act is the execution of the warrant, no statutory duty to provide a parole revocation hearing arises until after that event has taken place. Cook v. United States Attorney General, 488 F.2d 667 (5th Cir.), cert. denied, 419 U.S. 846, 95 S.Ct. 81, 42 L.Ed.2d 75 (1974);[14] Small v. Britton, 500 F.2d 299 (10th Cir. 1974). Those circuits likewise found that the constitutional requirements of Morrissey v. Brewer, supra, were satisfied by the statutory scheme, since Morrissey only required that a revocation hearing take place within a reasonable time after the parolee is "taken into custody," 408 U.S. at 488, 93 S.Ct. 2593, or in other words, upon the execution of the warrant.
 
 
 10
 Apparently to avoid the effect of 18 U.S.C. § 4205, which would cause the original sentence to be served concurrently with the intervening sentence upon execution of the warrant, it has become common practice to lodge the warrant as a detainer, but to delay its execution, and thus the hearing thereon, until just prior to completion of the sentence being served. Dr. Ciccone and the Board of Parole contend that the Board's policies and regulations nonetheless assure prisoners adequate due process.
 
 
 11
 That basic principles of due process apply to persons in custody is not seriously contested in this case. Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Thus, it is conceded that due process is required in parole revocation proceedings generally and that "the nature of the process that is due" includes an opportunity for a hearing prior to the final decision on revocation. Morrissey v. Brewer, supra. The opportunity to be heard must be granted "at a meaningful time and in a meaningful manner." Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). The possibility that parole may not be revoked after the hearing, or that, if parole is revoked, the original term may be served concurrently with the intervening sentence, the impact of a delayed hearing upon the prisoner's rehabilitation, as well the potential loss of evidence that may occur during a long delay, are all important interests now firmly recognized in the balancing process which due process entails. See Wolff v. McDonnell, supra; Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969); Cooper v. Lockhart, supra. While acknowledging these general principles, respondent nonetheless argues that, in the total federal setting, due process does not require a prompt hearing, especially where, as here, the fact of violation has already been determined by the conviction which produced the sentence currently being served.
 
 
 12
 We examine each of the various contentions of respondent and the amicus curiae, the United States Board of Parole, seriatim.
 
 Automatic Concurrent Sentences
 
 13
 It is argued that prompt execution of the parole violation warrant would cause automatic concurrent sentences to be served. This in turn, we are told, would be deleterious to the parole system because it would interfere with the discretion of the Board of Parole to require, in the interest of rehabilitating a particular prisoner-parolee, the original sentence to be served consecutively to the current sentence, or partially so. This rationalization finds support in the pre-Morrissey case of Zerbst v. Kidwell,304 U.S. 359, 58 S.Ct. 872, 82 L.Ed. 1399 (1938), and in language from our own decisions, see Noorlander v. United States Attorney General, 465 F.2d 1106 (8th Cir. 1972), cert. denied, 410 U.S. 938, 93 S.Ct. 1398, 35 L.Ed.2d 603 (1973); Tanner v. Moseley, 441 F.2d 122 (8th Cir. 1971); Hash v. Henderson, 385 F.2d 475 (8th Cir. 1967).
 
 
 14
 It is true that an automatic concurrent sentence is triggered by the language of 18 U.S.C. § 4205, discussed supra, which starts the sentence upon the prisoner's being taken into custody under the warrant. But it is no answer to such a constitutional imperative as due process that a legislative quirk may cause a prisoner to be dealt with more lightly than he deserves. Legislative amendment, not constitutional by-pass, is the obvious response to this problem.
 
 Morrissey and Cooper Distinguished
 
 15
 Respondent perceives a distinction between the cases before us and the rule in Morrissey v. Brewer, supra, because the latter, while applying due process safeguards to parole revocation proceedings, involved only executed warrants. As we observed supra, this distinction was approved by the Fifth Circuit in Cook v. United States Attorney General, 488 F.2d 667 (5th Cir.), cert. denied, 419 U.S. 846, 95 S.Ct. 81, 42 L.Ed.2d 75 (1974), and by the Tenth Circuit in Small v. Britton, 500 F.2d 299 (10th Cir. 1974). We think, however, that the right to a hearing "at a meaningful time and in a meaningful manner," Armstrong v. Manzo, supra, does not depend upon such technical distinctions. The issuance of a federal parole violator warrant upon probable cause and the lodging of it at the place of the federal prisoner's confinement signals a clear manifestation of intent by the Board of Parole to entertain proceedings to cancel for cause the prisoner's parole. There can be no other legitimate purpose.
 
 
 16
 Similarly, we reject the argument that Morrissey is not applicable where, as here, there is nothing to litigate since the inmate has already been convicted of committing the same offense which forms the basis of the revocation warrant. As we expressly recognized in Cooper, such an argument ignores the fact that revocation and subsequent reincarceration do not always follow, even where the parole violation was the commission of another crime. 489 F.2d at 315-16. Thus, while it is true that the fact of the prisoner-parolee's guilt cannot be relitigated, the revocation hearing may provide an opportunity for him to present certain circumstances in mitigation of the revocation of his parole. See Morrissey v. Brewer, supra; Pavia v. Hogan, 386 F.Supp. 1379, 1383 (N.D.Ga.1974); Sutherland v. District of Columbia Board of Parole, 366 F.Supp. 270, 272 (D.D.C.1973).
 
 
 17
 What we have said here likewise disposes of respondent's contention that Cooper v. Lockhart, supra, was only concerned with controlling the punitive effects of a detainer.[15] We there said quite clearly that "(t)he only issue before us is whether due process required for parole revocation under Morrissey mandates a timely hearing for a parolee subsequently convicted and confined in another state." 489 F.2d at 316 n.14. A detainer is a creature of convenience under which one authority honors a request of another authority to hold a prisoner for release to the custody of the requesting authority on another charge. Having no force in law, it is at best a matter of comity or compact and assures that the prisoner will not disappear before he can be held to account for unresolved charges. At its worst it operates within a system to cause a prisoner to be subjected to invidiously discriminatory treatment within the institution honoring the request for a detainer. See Cooper v. Lockhart, supra. We are not faced here with the complexities of dual sovereignties. See Lee v. United States, 501 F.2d 494, 502-03 (8th Cir. 1973) (Webster, J., concurring). The Board of Parole, through its agent, Dr. Ciccone, may be required to give the prisoner his due. See Pavia v. Hogan, supra; United States ex rel. Williams v. Saxbe, No. 4-74-Civ. 462 (D.Minn., Nov. 15, 1974); Peele v. Sigler, 16 Crim.L.Rptr. 2115 (E.D.Wash., Oct. 23, 1974); Gaddy v. Michael, 384 F.Supp. 1390 (W.D.N.C.1974); Fitzgerald v. Sigler, 372 F.Supp. 889 (D.D.C.1974); Jones v. Johnston, 368 F.Supp. 571 (D.D.C.1974); Sutherland v. District of Columbia Board of Parole, 366 F.Supp. 270 (D.D.C.1973).
 
 Board of Parole Rules And Regulations
 
 18
 In support of its present practices, the Board of Parole cites its rules and regulations which, it contends, guarantee fair treatment for each prisoner-parolee. Current regulations of the Board provide that, where the revocation warrant is placed as a detainer on the parolee who is serving a new sentence in an institution, "(s)uch prisoner shall be advised that he may communicate with the Board relative to disposition of the warrant, and may request that it be withdrawn or executed so his violator term will run concurrently with the new sentence." 39 Fed.Reg. 20038, § 2.53 (1974). An annual review procedure is required under the same regulation regardless of the ultimate disposition of any particular case. Id. On the other hand, the Board's internal rules provide that "(t)he violator may petition prior to the expiration of his new sentence that his parole or mandatory release be revoked and that he be permitted to serve some part of his violator time concurrently with his new sentence." Rules of the United States Board of Parole (1971), at 34. While such a petition is to be followed by a "dispositional review" following which the Board may decide, inter alia, to withdraw the detainer or execute the warrant,[16] this rule impermissibly conditions a prompt hearing upon the prisoner's request for parole revocation.
 
 
 19
 Under the terms of the regulation, moreover, a hearing does not automatically follow from the request of the prisoner-parolee for execution or withdrawal of the warrant. Instead, a dispositional interview is scheduled by the Regional Director of the Board only where "further information (is) deemed necessary." 39 Fed.Reg. 20038, § 2.53 (1974). Such discretionary interviews are no substitute for constitutionally required revocation hearings. In short, the rules and regulations called to our attention do not provide an acceptable solution.[17]
 
 III.
 QUASHING THE WARRANTS
 
 20
 Both Whittaker and Beshers, and the class they represent, have appealed from Judge Becker's refusal to order cancellation of the violator warrants. They contend that such relief is required in view of the already substantial delay in scheduling a parole revocation hearing.
 
 
 21
 The parole violator warrants against Whittaker and Beshers were issued February 23, 1972, and October 17, 1972, respectively. On May 14, 1974, the District Court ordered prompt revocation hearings and thereafter declined to stay its orders pending appeal. On brief, respondent represents that the required hearings were conducted between September and November, 1974 for those in the class involved.
 
 
 22
 Nothing in the record suggests invidious or purposeful interference by respondent with the due process rights of class members, or selective enforcement of the Board's regulations. Our holding today, while it is consistent with the teachings of Morrissey v. Brewer, supra, and is a logical extension of the principles announced in Cooper v. Lockhart, supra, does signal a constitutional obligation not before expressly recognized by this or any other federal appellate court. The Supreme Court has held Morrissey itself, as well as the application of its principles to prison disciplinary proceedings, not to be retroactive. Morrissey v. Brewer, supra, 408 U.S. at 490, 92 S.Ct. 2593; Wolff v. McDonnell, supra, 418 U.S. at 573, 94 S.Ct. 2963; see Proffitt v. Ciccone, 506 F.2d 1020, 1021 (8th Cir. 1974). Absent a showing of demonstrated prejudice severe enough to render the revocation hearing itself inadequate in terms of relief, we cannot say that the warrants should have been quashed or other habeas relief granted to preclude revocation of the paroles involved in this case. See Wingo v. Ciccone, 507 F.2d 354 (8th Cir. 1974). Delays in future cases must, however, be measured in consonance with notice of our holding today.
 
 
 23
 Affirmed.
 
 
 
 *
 Associate Justice Tom C. Clark, United States Supreme Court, Retired, sitting by designation
 
 
 [1]
 Cooper was presented to the court as a civil rights action, 42 U.S.C. § 1983, challenging the conditions of the prisoners' confinement
 
 
 [2]
 Two related appeals were before this panel at the same session. We dismissed one as moot pursuant to Rule 9(b) of the Rules of this Court. Hoyt v. Ciccone, 508 F.2d 846 (8th Cir. 1974). In the other, we affirmed the District Court's decision that a federal prisoner must be afforded an opportunity for speedy resolution of state criminal charges underlying a detainer lodged against him, but we refused to order outright dismissal of those charges. Wingo v. Ciccone, 507 F.2d 354 (8th Cir. 1974)
 
 
 [3]
 The basic facts are undisputed by the parties and by the amicus curiae, the United States Board of Parole
 
 
 [4]
 Whittaker and Beshers each initially sought relief in the United States District Court for the District of Columbia
 
 
 [5]
 Cleveland had been released as if on parole from federal prison prior to the expiration of his first sentence under the mandatory release program, see 18 U.S.C. §§ 4163-64; Whittaker and Beshers, discussed infra, had been released on parole
 
 
 [6]
 Both cases had been transferred to the United States District Court for the Western District of Missouri from the District of Columbia. See note 4 supra
 
 
 [7]
 See Williams v. Richardson, 481 F.2d 358 (8th Cir. 1973)
 
 
 [8]
 Magistrate Stewart framed this question as follows:
 The admitted facts of these petitions thus raise again the recurrent question of whether, under the recent decision of our Court of Appeals in Williams (Cooper) v. Lockhart, 489 F.2d 308 (8th Cir. 1973), the United States Board of Parole is required to execute its parole violation warrants at an early time within the intervening sentence of the prisoners who are the subjects of the warrants and accordingly grant an early parole revocation hearing.
 
 
 [9]
 The class was defined to include all convicts in the United States Medical Center for Federal Prisoners at Springfield, who are the subjects of unexecuted federal parole violation warrants, except those scheduled to be transferred from the Center more than 30 days before their parole revocation hearings can be held in accordance with the District Court's order
 
 
 [10]
 The District Court declined to grant a stay pending appeal of its order in any of the actions herein described
 
 
 [11]
 The appeals in No. 74-1430, Whittaker v. Ciccone, were argued before us together with 74-1420, Cleveland v. Ciccone. We deemed oral argument unnecessary in 74-1476, Beshers v. Ciccone, and that case was submitted to us on briefs during the same session of our court
 
 
 [12]
 These claims are cognizable in habeas corpus even though the relief sought, if granted, would not result in petitioners' immediate release from custody. See Braden v. 30th Judicial Circuit Court of Ky., 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973); Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968); cf. Pavia v. Hogan, 386 F.Supp. 1379 (N.D.Ga.1974)
 
 
 [13]
 Whittaker's and Beshers' petitions were designated class actions below. See note 9 supra. Once the District Court adopted the Magistrate's recommendation and certified the propriety of the class action, the class of unnamed petitioners acquired a legal status independent of that asserted by any of the named petitioners, thereby preserving jurisdiction and precluding the issues raised from becoming moot regardless of events occurring during the appellate process. Compare Sosna v. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), with Board of School Commissioners of Indianapolis v. Jacobs, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975)
 
 
 [14]
 See also Trimmings v. Henderson, 498 F.2d 86 (5th Cir. 1975); Burnett v. United States Board of Parole, 491 F.2d 966 (5th Cir. 1974). But see Pavia v. Hogan, 386 F.Supp. 1379 (N.D.Ga.1974)
 In summary, we find the cooperating custodial state denies the prisoner due process by continuing the effects of a detainer placed on him solely on the strength of a request for one made by a sister state.
 489 F.2d at 315.
 In that case we went no further than to order discontinuance of the restrictions Arkansas (the custodial state) had imposed solely on account of the detainer requested by Michigan, over which the court lacked jurisdiction.
 
 
 [16]
 Under the rule, the Board may:
 (a) let the detainer stand,
 (b) withdraw the detainer and close the case (if the expiration date has passed),
 (c) withdraw the detainer and permit the violation time to resume its course uninterruptedly from the time of release,
 (d) execute the warrant and permit the sentence to run from that point of time (which necessitates that the Board arrange for a timely revocation hearing).
 Rules of the United States Board of Parole (1971), at 35.
 
 
 [17]
 Nor do the other regulations called to our attention by the parties overcome these shortcomings. Section 2.22, appearing at 39 Fed.Reg. 20034 (1974), simply provides for a personal interview with the Board's staff personnel for attorneys, relatives or other parties interested in a particular case. Similarly, § 2.25, 39 Fed.Reg. 20034 (1974), which outlines the appeal procedures from a decision by a hearing examiner of the Board, does not provide an adequate answer to the precise problem raised in the cases before us