Ronald Wayne SHERMAN, Petitioner,

v.

Carl E. HIRSHMAN, United States Marshal for the District of New Jersey, et al., Respondents.

Civ. A. No. 76–557.

United States District Court, D. New Jersey.

May 12, 1976.

---

Roger A. Lowenstein, Federal Public Defender, D. N. J., Newark, N. J., John J.

Hughes, Asst. Public Defender, Newark, N. J., for petitioner.

Jonathan L. Goldstein, U. S. Atty., Newark, N. J., Kevin R. March, Asst. U. S. Atty., Newark, N. J., for respondents.

## OPINION

BARLOW, District Judge.

This is a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241, *et seq.* Petitioner is Ronald Wayne Sherman, currently an inmate at the Federal Correctional Institution in Danbury, Connecticut. In 1969, Sherman was sentenced to a ten-year term in federal prison for the robbery of the Yardley Savings Association in Yardley, Pennsylvania. In early 1973, he was released on parole. His supervision was transferred from Pennsylvania to Trenton, New Jersey. While in New Jersey, Sherman was convicted on an assault and battery charge. He was sentenced to eighteen months' imprisonment in the Mercer County Correctional Center. When this term expired, on or about October 29th, 1975, petitioner was transferred to federal custody on the basis of a parole violation warrant which had been issued shortly after he had been charged with assault and battery.

From the time of his transfer to federal custody in October, 1975, until mid-April, 1976, Sherman was incarcerated at the Metropolitan Correctional Center (M.C.C.) in New York City. In mid-April, he was transferred to Danbury, Connecticut, where he was given a parole revocation hearing. The United States Parole Board examiners, pursuant to that hearing, decided to revoke Sherman's parole and to allow him to be reparoled on June 16th, 1976, to New Jersey officials who hold a bastardy detainer against him—or, alternatively, to allow him to be reparoled to the "street" on August 18th, 1976.[1] The issue pending before this Court is whether the six-month delay in according Sherman a parole revocation hearing justifies his immediate release from custody.

---

1. Apparently, the "alternative" release date is to apply if there is no bastardy detainer pending against Sherman.

**14**

In *Morrissey v. Brewer*, 408 U.S. 471, 488, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Supreme Court held, *inter alia*, that the constitutional guarantee of due process requires parole authorities to conduct a parole revocation hearing "within a reasonable time" after the alleged parole violator is taken into custody. Even before *Morrissey*, federal parolees had been granted the right to a prompt hearing pursuant to 18 U.S.C. § 4207. See, *e. g., United States ex rel. Buono v. Kenton*, 287 F.2d 534 (2d Cir. 1961), *cert. denied*, 368 U.S. 846, 82 S.Ct. 75, 7 L.Ed.2d 44 (1961). Delays in excess of three months have generally been held to be unreasonable. See *United States ex rel. Hahn v. Revis*, 520 F.2d 632, 638 n. 5 (7th Cir. 1975); *Marchand v. Director, U. S. Probation Office*, 421 F.2d 331, 335 n. 5 (1st Cir. 1970), and the authorities cited therein. In the recently enacted Parole Commission and Reorganization Act, Congress determined that a parolee in Sherman's situation—*i. e.*, someone convicted and sentenced on a state charge and later transferred to federal custody on the basis of a parole violation warrant—is entitled to a formal revocation hearing within ninety (90) days of the date he is taken into federal custody. Public Law 94-233, 90 Stat. 219, § 4214(c), to be codified at 18 U.S.C. § 4214(c) (effective on May 14th, 1976). Ninety days, then, appears to be the outermost limit of "reasonableness". Accordingly, there being no unusual reason or excuse for the six-month delay in the present case, we are constrained to hold that delay to be unreasonable. The only question remaining is one of remedy.

Traditionally, a parolee whose revocation hearing has been delayed unreasonably is entitled only to an order requiring an immediate hearing, and not to release—unless the parolee can demonstrate actual prejudice flowing from the delay in his attempt to adduce exculpatory or mitigating evidence. See *Shelton v. United States Board of Parole*, 128 U.S.App.D.C. 311, 388 F.2d 567, 574 (1967); *Agresti v. Parker*, 285 F.Supp. 893 (M.D.Pa.1968); cf. *United States ex rel. Buono v. Kenton, supra*. While this rule has been widely adhered to even after *Morrissey*, see, *e. g., Jones v. Johnston*, 534 F.2d 353, 374–375 (D.C.Cir. 1976); *Gaddy v. Michael*, 519 F.2d 669, 673 (4th Cir. 1975); *Robb v. Norton*, 394 F.Supp. 856, 858–9 (D.Conn.1975), some courts have suggested that unreasonable delay in itself justifies release—whether or not the parolee can show actual prejudice. See *United States ex rel. Hahn v. Revis, supra*, 520 F.2d at 639; cf. *Cleveland v. Ciccone*, 517 F.2d 1082, 1089 (8th Cir. 1975).[2]

We think that in the circumstances of Sherman's case, the "immediate release" rule, rather than the "actual prejudice" rule, see n. 2, *supra*, is appropriate. Sherman was held for six months on a violator warrant, without a hearing. This warrant was the sole basis of Sherman's custody (discounting two New Jersey detainers for minor offenses which clearly would not result in further incarceration). We think it quite possible, even likely, that Sherman

---

**2.** These two cases merit some discussion. In *Cleveland*, the Eighth Circuit held unconstitutional the common practice of deferring revocation hearings until the expiration of a parolee's intervening sentence. The court held that this then-novel principle should not be applied retroactively so as to result in the cancellation of the violation warrants pending against the *Cleveland* petitioners—unless actual prejudice could be demonstrated. 517 F.2d at 1089. The court warned, however, that "[d]elays in future cases must . . . be measured in consonance with notice of our holding today". *Id.* The Seventh Circuit's holding in *Revis* was identical to the *Cleveland* holding except that the Seventh Circuit ordered the petitioner's immediate release from the restraint of the viola-

tion warrant. 520 F.2d at 639. Later, however, the mandate in *Revis* apparently was withdrawn, see *Jones v. Johnston, supra*, 534 F.2d at 373 n. 48, and the Seventh Circuit subsequently held that the "immediate release" rule of *Revis* was not to be applied retroactively. *Johnson v. Holley*, 528 F.2d 116, 119 (7th Cir. 1975). The upshot of all this is that in the Seventh and Eighth Circuits parolees in Sherman's situation would be immediately released. See *Walton v. Wright*, 407 F.Supp. 783, 786 (W.D.Wis.1976). The Fourth and D.C. Circuits, on the other hand, would demand a showing of actual prejudice. See *Jones v. Johnston, supra; Gaddy v. Michael, supra*. To our knowledge, the Third Circuit has not ruled on the remedy issue.

would have been released by this time had he been given a prompt revocation hearing. Sherman testified at the hearing on the present application that the probation officer who conducted his initial probable cause hearing indicated that he likely would be incarcerated for about six months on the violation. The relatively light sentence imposed by the Parole Board examiners, once a hearing finally was held, indicates that the examiners did not think Sherman's violation to be particularly serious. (Sherman could have been required to serve out his maximum sentence, which expires in November, 1978.) We think it fundamentally unfair for the Board to have deprived Sherman of an opportunity to receive a shorter time in custody than he ultimately received by the unreasonable delay of his revocation hearing. As the Seventh Circuit has pointed out:

> "To order anything less than petitioner's release from the restraint of the violation warrant would be to provide petitioner a right without a remedy, and federal courts have recognized that unjustified delay in providing a revocation hearing requires the issuance of a writ of habeas corpus."

*United States ex rel. Hahn v. Revis, supra,* 520 F.2d at 639; also cf. *Strunk v. United States,* 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973).

Moreover, even if we were to apply the "actual prejudice" rule, we think that Sherman has made a sufficient showing to justify his release. He testified that, during his incarceration at M.C.C., he lost track of witnesses who could have presented mitigating evidence concerning the non-serious nature of the assault and battery charge and concerning his employment record. Although Sherman's testimony on this matter was somewhat vague and not entirely credible, we do accept his basic premise that it is now more difficult for him to obtain mitigating evidence than it would have been six months ago. Given the length of Sherman's incarceration on the violation warrant (well beyond the three-month limit on reasonableness), and the absence of any excuse for the delay other than bureaucratic inefficiency, the showing of prejudice by Sherman, though slight, is sufficient.

Two final matters merit discussion. First, there is Sherman's apparent failure to request a revocation hearing while he was at M.C.C. Ordinarily, the Board is required to grant a prompt hearing only upon proper request. *Jones v. Johnston, supra,* 534 F.2d at 358 n. 11. However, the United States decided not to urge this defense on the present application. See Brief in Opposition to Petitioner's Application, at p. 5, n. 2. Moreover, the failure to request a hearing here—if, indeed, there was such a failure—is mitigated by the fact that the *only* basis for Sherman's incarceration at M.C.C. was the parole violation warrant. This was not the situation in *Jones v. Johnston, supra,* where the petitioners were in custody on other charges. Obviously, a request for a prompt hearing is more meaningful in the *Jones* situation than in Sherman's situation—where the authorities already know, or should know, that the prisoner is awaiting a revocation hearing.

Secondly, there is the question of this Court's jurisdiction. At one time, it was widely held that habeas corpus jurisdiction existed only in the federal district where the petitioner was incarcerated. See *Ahrens v. Clark,* 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948). Sherman, of course, was incarcerated in New York City at the time this petition was filed, and now is in Danbury, Connecticut. However, in *Braden v. 30th Judicial Circuit of Kentucky,* 410 U.S. 484, 494–99, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), the Supreme Court limited the effect of *Ahrens v. Clark, supra,* and held that a federal district court having jurisdiction over the *custodian* of the prisoner was the proper forum for a habeas petition—regardless of the place where the prisoner is incarcerated. Here, the true "custodians" of Sherman were the New Jersey probation officials named as defendants in this action, because Sherman was held in custody on the New Jersey probation office's violation warrant until the time of his recent revoca-

tion hearing. Sherman's present incarceration pursuant to that revocation hearing[3] does not divest our jurisdiction because the Government was under notice from this Court that, if a revocation hearing was held, and a sentence imposed, the effect of such action would be subject to our determination of the delay issue.

In accordance with this opinion, a writ of habeas corpus will issue, Sherman's violation warrant will be vacated, and he will be released from custody forthwith.

---

**3.** Arguably, Sherman's present custody is still based on the violation warrant because the United States Parole Board has not yet approved the recommendation of its two-examiner panel which conducted Sherman's revocation hearing at Danbury.