UNITED STATES of America ex rel. Rev. Frank Robert Cordee HAHN, Petitioner-Appellant,

v.

R. Vernon REVIS and United States Board of Paroles and Pardons, Respondents-Appellees.

No. 74–1057.

United States Court of Appeals, Seventh Circuit.

Argued May 21, 1974.

Decided July 25, 1975.

---

Francis X. Beytagh, Notre Dame, Ind., Norman J. Lerum, Law Student, for petitioner-appellant.

James R. Thompson, U. S. Atty., Gary L. Starkman and Martin B. Lowery, Asst. U. S. Attys., Chicago, Ill., for respondents-appellees.

Before FAIRCHILD, Chief Judge, STEVENS, Circuit Judge, and LARAMORE, Associate Judge.[*]

FAIRCHILD, Chief Judge.

Petitioner, a federal parolee serving a state sentence, challenged, by application for a writ of habeas corpus, the failure of the federal Parole Board to hold a parole revocation hearing promptly after issuance of a parole violation warrant filed as a detainer. Both the Illinois warden and the federal Parole Board were named respondents. There was no challenge to the Illinois conviction and sentence. The application was denied and petitioner appealed. On June 27, 1974, pending disposition of this appeal, we ordered him released on his own recognizance to the extent custody was predicated on the federal sentence, parole violation warrant, and detainer.

I

The history of petitioner's sentences and imprisonment is complex.

On February 5, 1969, a federal district court sentenced petitioner to imprisonment for five years, (apparently computed from October 21, 1968, the date of arrest), but provided that the sentence be served concurrently with the remainder of a 1965 Wisconsin five year sentence and with a not yet served 1968 Illinois five to ten year sentence, and recommended the Wisconsin penitentiary as the place of custody.

On December 2, 1969, petitioner was mandatorily released by Wisconsin and transferred to federal custody. Petitioner was incarcerated in the United States Penitentiary in Terre Haute. On January 30, 1970, the Illinois court modified the 1968 sentence so as to be from three years and three months to eight years and three months, to be served concurrently with the unexpired 1969 federal sentence. At that point, petitioner's federal sentence was due to expire October 20, 1973, with the Illinois sentence extending to approximately April 30, 1973 at the minimum, April 30, 1978 at the maximum.

On April 11, 1972, petitioner was mandatorily released by federal authorities pursuant to 18 U.S.C. § 4163, making him the equivalent of a parolee under 18 U.S.C. § 4164, with 557 days of his 1969 federal sentence remaining unserved. Although a substantial portion of his Illinois sentence remained to be served, petitioner was not transferred to Illinois custody. No explanation appears in the record. Had he been so transferred, the respective expiration dates would have remained the same.

On October 27, 1972, the federal Parole Board issued a parole violation warrant, charging that on August 8, petitioner was arrested in Indiana after attempting to prevent police from taking custody of a runaway juvenile; on September 15, he failed to appear for trial on that charge; on September 7, a warrant was issued in Illinois charging that he took his son from the school playground; on October 4, in Illinois, he forcibly took another of his children from a foster mother; he did not have permission to leave the southern district of Indiana; and he failed to report his change of address.

On February 13, 1973, petitioner was arrested in Illinois on Illinois kidnapping charges. He was confined in jail until transferred to the Illinois State Penitentiary on March 12, 1973. He pleaded

---

[*] Associate Judge Don Nelson Laramore of the United States Court of Claims is sitting by designation.

guilty to a misdemeanor arising out of an incident during the alleged abduction of his daughter and received, on June 20, 1973, a four month sentence to run concurrently with the 1968 Illinois sentence. Pending Indiana charges had been dropped on April 10, 1973 and the Illinois kidnapping charges were dismissed in September and December 1973.

On April 5, 1973 the federal parole violation warrant was lodged as a detainer at the Illinois prison. In the following months petitioner repeatedly requested the Board of Parole either to hold a revocation hearing or quash the warrant. On September 4, 1973 he filed his petition for a writ of habeas corpus in the district court seeking discharge from the restraint of the federal warrant and from federal custody.

Thereafter, in September, the Board gave petitioner what it called a "dispositional review" based on an examination of his file. Without reaching the merits of whether parole should be revoked, the Board ordered that the detainer stand. No date was set for a revocation hearing, but petitioner was advised that another review would be provided in September 1974.

As of September, 1973, petitioner was serving concurrent Illinois sentences. The four month sentence for the offense committed while on parole would soon expire, on October 19 at the latest, if possible credit for jail time be disregarded. His 1968 Illinois sentence would continue to run for several months at the minimum and some five years at the maximum. The Parole Board was holding open the possibility that he might be compelled to serve the full 557 day balance of his federal term consecutively to the 1968 Illinois sentence even though both federal and state sentencing judges had found that concurrent service would be appropriate.

On December 12, 1973 the district court dismissed the petition for writ of habeas corpus. On May 10, 1974, the Illinois Parole Board decided to release petitioner on parole and provided for his transfer to federal custody pursuant to the federal detainer. He had not, however, been transferred at the time of oral argument herein, nor at the time of our order, June 27, 1974, that he be released to the extent custody was predicated on the federal sentence, parole violation warrant, and detainer.

II

The problem is to accommodate the constitutional doctrine of *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) with what may literally be appropriate and permissible under the federal statutes governing revocation of parole.

The parole violation warrant was issued within the maximum term of petitioner's federal sentence. It was therefore timely. 18 U.S.C. § 4205. Such a warrant is to be executed by taking petitioner and returning him to the custody of the Attorney General, § 4206, and his unexpired federal term shall begin to run from the date of such return to custody. § 4205. Section 4207 grants to a "prisoner retaken upon a warrant" "an opportunity to appear." Thus the statute provides for a hearing after execution of the warrant, but no statute limits the time which may elapse between issuance and execution of a warrant.[1] The courts, moreover, have sanctioned delays in execution where a parolee is serving a new sentence for an offense committed while on parole, *e. g., Moore v. Smith*, 412 F.2d 720, 722–23 (7th Cir. 1969), or is being held pending disposition of criminal charges arising out of his activities on parole, *e. g., Burdette v.*

---

1. Nevertheless, there is a growing body of authority that once issued, fundamental fairness requires that the warrant be executed within a reasonable time. *See e. g., Shelton v. United States Board of Parole*, 128 U.S.App.D.C. 311, 388 F.2d 567, 574 (1967); *Noorlander v. United States Attorney General*, 465 F.2d 1106, 1109 (8th Cir. 1972), *cert. denied*, 410 U.S. 938, 93 S.Ct. 1398, 35 L.Ed.2d 603; *Simon v. Mosely*, 452 F.2d 306, 309 (10th Cir. 1971); *Smith v. United States*, 409 F.2d 1188, 1191, n.3 (9th Cir. 1968).

*Nock*, 480 F.2d 1010, 1011–12 (6th Cir. 1973). Consequently, it has not been uncommon for parole revocation to take place years after the alleged parole violations.[2]

In *Zerbst v. Kidwell*, 304 U.S. 359, 362–63, 58 S.Ct. 872, 82 L.Ed. 1399 (1938), the Supreme Court identified a policy reason why the unexpired term of a parole violator should not begin to run from the date he is "imprisoned for a new and separate offense" so that "a parole violator can be required to serve some time in prison in addition to that imposed for an offense committed while on parole." Although the question presented in *Zerbst* arose out of an intervening federal sentence, the philosophy expressed would equally justify delay in execution of a federal parole violation warrant until termination of imprisonment for a state offense committed during release on parole. In the instant case, however, petitioner's sentence for the state offense committed on parole was only four months, ending at the latest in October, 1973. The *Zerbst* philosophy would be irrelevant after that point, since his continued state imprisonment was the result of conduct which took place before his federal sentence was imposed.

In *Morrissey v. Brewer*, the Supreme Court concluded that the termination, by revocation, of parolee's somewhat restricted liberty inflicts a "grievous loss" and specified the minimum requirements of due process for effecting such termination. These included a prompt hearing to determine probable cause, and, if desired, an opportunity for a hearing before a final decision on revocation, tendered within a reasonable time after the parolee is taken into custody. "The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or if he did, that circumstances in mitigation suggest that the violation does not warrant revocation." 408 U.S. at 488, 92 S.Ct. at 2603.

The Fifth and Tenth Circuits have considered the impact of *Morrissey* on the practice of delaying execution of the parole violation warrant until the parolee's release from intervening imprisonment and delaying any hearing until after execution. The government urges that we follow these decisions and apply them in the instant case. *Cook v. United States Attorney General*, 488 F.2d 667 (5th Cir. 1974); *Small v. Britton*, 500 F.2d 299 (10th Cir. 1974). Both courts concluded that the right to a *Morrissey* revocation hearing does not accrue until the parolee is taken into federal custody upon execution of the warrant. In effect, these courts concluded that delay in hearing and decision until release from intervening imprisonment entailed no "grievous loss."

■ The Eighth Circuit, however, identified elements of grievous loss and held that the state in which the parolee is serving a sentence must disregard the existence of a parole violation warrant unless the state in which the warrant was issued affords a prompt hearing on revocation. *Cooper v. Lockhart*, 489 F.2d 308 (8th Cir. 1973). We find the latter view more persuasive.[3]

■ *Morrissey* teaches that whether the requirements of due process apply depends upon whether an individual suffers a "grievous loss" as a result of governmental action. 408 U.S. at 481, 92 S.Ct. 2593. In *Morrissey*, the Court con-

2. *See, e. g., Cook v. United States Attorney General*, 488 F.2d 667 (5th Cir. 1974) (6 years); *Shelton v. United States Board of Parole*, 128 U.S.App.D.C. 311, 388 F.2d 567, 572 (1967) (2½ years); *Tirado v. Blackwell*, 379 F.2d 619 (5th Cir. 1967) (3 years), *cert. denied*, 390 U.S. 992, 88 S.Ct. 1186, 19 L.Ed.2d 1301; *Smith v. Blackwell*, 367 F.2d 539 (5th Cir. 1966) (7 years).

3. Because we are choosing one of the views on which there is a conflict between circuits, this opinion was circulated, before filing, to all judges of this court in regular active service. A majority voted not to rehear en banc. Judges Pell and Bauer, preferring the view expressed in *Cook, supra*, voted to grant a hearing en banc on the issue.

cluded that when a parole board orders a parolee to return from conditional liberty to prison, the parolee suffers such a loss. Here, however, petitioner's state imprisonment did not result from Parole Board action, and federal imprisonment as a result of its action would not begin until a later time.

■ Petitioner argues that when the Board caused the violation warrant to be lodged as a detainer, it caused further curtailment of liberty. We recognize that a detainer may result in a loss of privileges while a prisoner is serving a sentence, and that it may substantially diminish the prisoner's prospects for parole. *Cooper v. Lockhart, supra,* 489 F.2d at 314, n.10. *But see Cook v. United States Attorney General, supra,* 488 F.2d at 673. See generally, R. Dawson, Sentencing: The Decision as to Type Length, and Conditions of Sentence 283 (1969); Note, Detainers and the Correctional Process, 16 Wash.U.L.Q. 417, 418–20 (1966).

Other elements of grievous loss, resulting from the outstanding detainer and the delay in the opportunity to remove it, include impairment of rehabilitation, possible prejudice in opportunity to defend against charge of violation or to demonstrate mitigating circumstances, and risk of a longer total period of imprisonment. *Smith v. Hooey,* 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). *See Strunk v. United States,* 412 U.S. 434, 439, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973).

The last named element, the loss of the possibility of having the remainder of the federal sentence, after revocation, run concurrently with the balance of the Illinois sentence is specially significant in this case. Both the state and federal sentencing judges ordered that the sentences be served concurrently, and by delaying a decision on revocation the Parole Board was at least holding open the possibility that the remaining 557 days of the federal sentence be consecutive to the service of the 1968 Illinois sentence, contrary to the intention of the sentencing judges. If, on the other hand, peti-

tioner had been given an opportunity to persuade the Board to execute the warrant in the spring of 1973, his federal sentence would have been completed late in 1974.

■ Our next inquiry involves what process is due the violator incarcerated for an offense committed in violation of the terms of his parole. Obviously there is no point in relitigating the fact that a violation occurred. Yet it is not a foregone conclusion that parole will be revoked. *Gagnon v. Scarpelli,* 411 U.S. 778, 784, n.8, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). This is true even when the violation involves serious criminal conduct. Dawson, *supra,* at 369–74. Accordingly, notwithstanding incarceration for another offense, the violator has a substantial interest in presenting facts in mitigation of the violation that would influence the Board either to set aside the violation warrant or execute it giving him the benefit of concurrent sentences.

■ Apparently, the Board reasons that if a revocation hearing must be held shortly after a parolee is incarcerated for an offense committed while on release, it will be required to have executed the warrant prior to such hearing. This would cause the parolee's initial unexpired sentence to run, and as a result the Board could no longer penalize parole violators by delaying the service of unexpired sentences. We see no reason, however, why a hearing cannot precede execution of the warrant. Even the Board's present practice does not foreclose consideration of the revocation issue prior to execution of the warrant. *See Cook v. United States Attorney General,* 488 F.2d 667, 672, n.11 (5th Cir. 1974).

■ We conclude, therefore, that due process entitles parolees who are incarcerated for another offense and subject to an outstanding violation warrant to a timely hearing at which they may present mitigating circumstances that bear on the revocation decision. *See Peele v. Sigler,* 392 F.Supp. 325 (E.D.

Wash. Oct. 23, 1974); *Fitzgerald v. Sigler*, 372 F.Supp. 889 (D.D.C.1974); *Jones v. Johnston*, 368 F.Supp. 571 (D.D.C.1974); *Sutherland v. District of Columbia Bd. of Parole*, 366 F.Supp. 270 (D.D.C.1973).

■ Presently, the Board conducts "dispositional interviews" in some circumstances at the request of a prisoner against whom a warrant has been lodged as a detainer.[4] In our view due process requires that a hearing along the lines of these interviews be held, in compliance with the procedures set forth in *Morrissey*, within a reasonable time after the parolee's criminal conviction establishes the parole violation.[5] Based on the evidence presented and its expertise, the Board can then exercise an informed judgment on whether the violation warrant should be withdrawn, executed, or lodged and retained as a detainer pending further consideration of revocation.

### III

■ In the case before us, petitioner was accorded no hearing, but only a "review" of his file and information sup-

plied by the Illinois warden. Without a statement of reasons, the Board notified petitioner that it had decided to let the detainer stand and intended to take him into federal custody when he was released by the state authorities. We do not think that this ex parte file review satisfies the requirements of due process.

Beginning in May 1973, first through his attorney and then on his own behalf, petitioner wrote letters requesting a parole revocation hearing or alternatively the quashing of the violation warrant. Petitioner's attorney informed the Board that in his view there was no basis for the kidnapping charges and that there were extenuating circumstances concerning the other alleged violations. He offered to produce court records to prove that petitioner had never lost his custodial rights to the children allegedly kidnapped.

Petitioner's habeas petition claims that he abducted his children because he feared for their safety in foster homes and had heard that his son had been sexually molested. Coupled with his attorney's offer of proof that petitioner

---

**4.** 28 C.F.R. § 2.53 (1974) *Warrant placed as a detainer and dispositional interview.*

(a) In those instances where the prisoner is serving a new sentence in an institution, the warrant may be placed there as a detainer. Such prisoner shall be advised that he may communicate with the Board relative to disposition of the warrant, and may request that it be withdrawn or executed so his violator term will run concurrently with the new sentence. Should further information be deemed necessary, the Regional Director may designate a hearing examiner panel to conduct a dispositional interview at the institution where the prisoner is confined. At such dispositional interview the prisoner may be represented by counsel of his own choice and may call witnesses in his own behalf, provided he bears their expenses. He shall be given timely notice of the dispositional interview and its procedure.

(b) Following the dispositional review the Regional Director may:

(1) Let the detainer stand;

(2) Withdraw the detainer and close the case if the expiration date has passed;

(3) Withdraw the detainer and reinstate to supervision; thus permitting the federal sen-

tence time to run uninterruptedly from the time of his original release on parole or mandatory release.

(4) Execute warrant, thus permitting the sentence to run from that point in time. If the warrant is executed, a previously conducted dispositional interview may be construed as a revocation hearing.

(c) In all cases, including those where a dispositional interview is not conducted, the Board shall conduct annual reviews relative to the disposition of the warrant. These decisions will be made by the Regional Director. The Board shall request periodic reports from institution officials for its consideration.

**5.** A reasonable time would appear to be no longer than the length of time delay is presently sanctioned between the time a violation warrant is executed and a revocation hearing is held. As a general rule, three months appears to be the maximum delay tolerated. *Marchand v. Director, U. S. Probation Office*, 421 F.2d 331, 335, n.5 (1st Cir. 1970) and authorities cited therein.

had a legal right to custody of the children, this assertion presents a more than colorable mitigating circumstance. Yet nowhere in the record does it appear that the Board was aware of this claim. Even if the Board was aware of petitioner's motives, a personal explanation of his actions may have been critical. Not only would the Board then have been able to gauge his credibility, but the facts surrounding the incidents could have been fully developed.

Petitioner had not had a revocation hearing at the time this appeal was argued, almost a year after his conviction on the battery charge, and we have received no indication that a hearing has been held at a later date. Such delay is inordinate.[6]

In view of the unjustifiable delay, we do not think it appropriate to order a revocation hearing at this late date. See Strunk v. United States, supra, 412 U.S. at 439, 93 S.Ct. 2260. To order anything less than petitioner's release from the restraint of the violation warrant would be to provide petitioner a right without a remedy, and federal courts have recognized that unjustified delay in providing a revocation hearing requires the issuance of a writ of habeas corpus. See e. g., United States ex rel. Buono v. Kenton, 287 F.2d 534, 536 (2d Cir. 1961); Sutherland v. District of Columbia Board of Parole, 366 F.Supp. 270, 273 (D.D.C.1974); United States ex rel. Hitchcock v. Kenton, 256 F.Supp. 296, 301 (D.Conn.1966).

Accordingly, the judgment appealed from is reversed and the cause remanded with instructions that the district court issue a writ of habeas corpus providing for release of the petitioner from custody, insofar as custody is predicated on the February 5, 1969 sentence, and that the district court quash the parole violation warrant issued October 27, 1972.

---

**6.** We recognize that inordinate delays in the disposition of criminal charges may prejudice parolees threatened with revocation. Since it is not necessary for our decision, we express no opinion on the applicability of *Morrissey* standards as a matter of course when the parolee has been arrested and charged but not convicted of a "new crime." See In Re Valrie, 12 Cal.3d 139, 115 Cal.Rptr. 340, 524 P.2d 812 (1974), cert. denied, Procunier v. Valrie, 420 U.S. 938, 95 S.Ct. 1148, 43 L.Ed.2d 414 (U.S. Feb. 18, 1975) (No. 74–454) (*Morrissey* protections applicable from the time of arrest for the new offenses).