Everett BRYANT, Petitioner,

v.

Henry GRINNER et al., Respondents.

No. 75–C–579.

United States District Court,
W. D. Wisconsin.

Nov. 17, 1976.

Supplemental Opinion Nov. 22, 1976.

Lester A. Pines, of Frankel, Langhammer & Pines, Madison, Wis., for petitioner.

David C. Mebane, U. S. Atty., Madison, Wis. (W.D.Wis.), for defendant.

OPINION AND ORDER

JAMES E. DOYLE, District Judge.

This is a petition for a writ of habeas corpus. Petitioner, an inmate at the Feder-

al Correctional Institution, Oxford, Wisconsin, claims that he is in custody in violation of the Constitution of the United States as a result of unreasonable delay in holding a parole revocation hearing and the denial of his rights at the hearing. Jurisdiction is present. 28 U.S.C. § 2241.

Based upon the record before me, I find as fact those matters set forth hereinafter under the heading "Facts."

### Facts

Petitioner Bryant is presently confined at the Federal Correctional Institution, Oxford, Wisconsin. He had been serving a sentence of imprisonment imposed by a United States District Court when, on May 15, 1975, he was released within the state of Illinois on parole.

On June 27, 1975, a federal warrant for parole violation was issued against the petitioner. The application for the federal warrant charged that on June 27, 1975, petitioner was arrested by the sheriff of Franklin County, Illinois, and charged by state officials with resisting arrest, aggravated assault, armed violence, reckless conduct, and intimidation. On June 30, 1975, a United States probation officer for the Eastern District of Illinois, J. Bruce Chambers, sent a letter to the regional director of the United States Board of Parole stating, among other things: "We are wondering if parolee should not be afforded counsel since he is illiterate to make sure that he understands all of the revocation proceedings, if the Board wants to commence proceedings at this time."

A supplemental federal warrant application dated July 9, 1975, charged petitioner with having unauthorized possession of a firearm on June 27, 1975, when arrested. On July 18, 1975, the federal warrant was executed; petitioner was transferred from state custody in the county jail in Benton, Illinois to federal custody in the county jail at Belleville, Illinois.[1]

A preliminary interview was conducted on July 21, 1975, in Belleville, Illinois by a United States probation officer other than Chambers. There is no indication that petitioner enjoyed the assistance of counsel in this interview, and I find that he did not. At the interview, petitioner signed a federal "Preliminary Interview and Revocation Hearing Form," stating that he admitted violating one or more of the conditions of his release and requesting that he be afforded a revocation hearing upon return to a federal institution. He also signed a "Statement of Parolee or Mandatory Releasee Concerning Appointment of Counsel Under the Criminal Justice Act" in which he stated that he did not wish to apply for appointment of counsel at the prospective hearing at the institution; and stated that he did not contest any of the charges contained in the application for the warrant and in the supplemental warrant application.

On July 29, 1975, the United States Parole Board asked the Bureau of Prisons to designate an institution, and on August 6, 1975, the Federal Correctional Institution at Oxford, Wisconsin was designated for petitioner. Petitioner remained confined under the parole violation warrant in the county jail at Belleville until he was transported on September 17 and 18, 1975, to the United States Penitentiary at Terre Haute, Indiana. He was received at the Federal Correctional Institution (FCI) at Oxford, Wisconsin on October 9, 1975.

On October 29, 1975, at FCI Oxford, Wisconsin, petitioner executed another "Statement of Parolee . . . Concerning Appointment of Counsel Under the Criminal Justice Act" form in which he stated that he wished to apply to this court for appointment of counsel to represent him at his revocation hearing, and in which he again stated that he did not contest any of the charges contained in the application for the warrant or in the supplemental application, but also stated "I did not know what I was

---

1. By inference from the absence of anything to the contrary in this record, I find that none of the state charges has been pursued in the Illinois state courts and that petitioner has been convicted of none of them.

doing." I find that he intended this statement to apply to the events of June 27, 1975. On November 5, 1975, Jon Axelrod was appointed by this court as petitioner's attorney; on November 20, 1975, by order of this court, Lester Pines was substituted as petitioner's attorney.

In a letter dated November 14, 1975, Mr. Axelrod and a law student from the Legal Assistance to Inmates Program (LAIP) of the University of Wisconsin informed the Regional Director of the United States Board of Parole, who received the letter on November 17, 1975, that LAIP had been appointed to represent petitioner at a parole revocation hearing scheduled for the next round of hearings in November or December of 1975. The letter also stated that petitioner was contesting all charges against him; requested the presence of adverse witnesses for the purposes of cross-examination; and asked certain questions concerning the charges against petitioner. In a letter dated November 19, 1975, the office of the Regional Director responded by saying that because of the Privacy Act, information concerning petitioner's case could not be disclosed without his written consent, and that the proper form had been forwarded to petitioner.

The parole revocation hearing took place on November 20, 1975, before examiners Grinner and Salisbury. Petitioner denied the charges against him and remained silent in response to questions concerning them. No witnesses were present at the hearing. The evidence presented consisted of a police report dated June 27, 1975, and the letter from a United States Probation Officer Chambers dated June 30, 1975, both of which examiner Salisbury read aloud. On the basis of those documents petitioner was found guilty of the charges against him. The examiners recommended that the Board revoke petitioner's parole and continue his case for an institutional review hearing in November, 1978. Petitioner was informed of the Board's decision, embodying the examiners' recommendations, in a notice of action dated December 3, 1975.

*Opinion*

Respondents assert that petitioner has not exhausted his administrative remedies as required by law but do not state what law requires exhaustion or which administrative remedies must be exhausted.

Then 28 C.F.R. 2.25 set forth procedures for appealing the decision of a hearing examiner of the Parole Board to the Regional Director, and then 28 C.F.R. 2.26 provided for appeal from the Regional Director's decision to the National Appellate Board. These regulations did not require an appeal from the decision of a hearing examiner; rather they provided that an inmate might appeal. The question therefore is whether I should require petitioner to have appealed the decision of the examiners to revoke his parole before presenting his claims in this court. Then 28 C.F.R. 2.25(d) provided:

(d) Appeals under this section may be based only upon the following grounds:

(1) The reasons given for a denial or continuance do not support the decision; or

(2) There was significant information in existence but not known at the time of the hearing.

Since petitioner would not have been permitted to challenge the decision on the ground that the procedures were constitutionally deficient, resort to the appeal process set forth in then 28 C.F.R. 2.25 and 2.26 would have served no purpose and should not be required. I am aware of no other administrative procedures available to petitioner by which he could raise the issues he seeks to litigate in this action.

Petitioner asserts, among other things, that there was unreasonable delay in holding the parole revocation hearing.

In *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1971) it was held that a parolee is entitled to a hearing within a reasonable time after the parolee is taken into custody, stating that two months "would not appear to be unreasonable." In determining what constituted a reasonable time for holding a hearing on charges that a parolee had been convicted in a state

court of committing an offense, the Seventh Circuit noted in dictum that as a general rule three months is the maximum delay tolerated by courts between the execution of a warrant and the revocation hearing. *United States ex rel. Hahn v. Revis*, 520 F.2d 632, 638 (July 25, 1975).[2] Referring to this statement in a subsequent case, the court stated, again in dictum, that a lapse of four months from the time a parolee is returned to custody would be unreasonable unless some substantial part of the delay were attributable to the parolee. *Johnson v. Holley*, 528 F.2d 116, 119 (7th Cir. 1975).

With respect to the appropriate remedy, *Hahn v. Revis* appears to stand for the proposition that when an unreasonable delay has occurred, only release from custody under the parole revocation warrant, rather that the grant of a tardy hearing, will suffice. However, *Johnson v. Holley* holds that this rule of *Hahn v. Revis* is not to be given retroactive effect. In *Walton v. Wright*, 407 F.Supp. 783 (W.D.Wis.1976), I decided that if the parole officials provided the required hearing within three months following July 25, 1975 (the date of decision in *Hahn v. Revis*), whatever the length of the delay prior to July 25, 1975, release from custody would be required only upon a showing of prejudice severe enough to render the hearing itself inadequate as a form of relief. Applying the *Walton* formula here, the hearing should have occurred no later than October 25, 1975; it did not occur until 26 days later.

Respondents here contend that any delay in the hearing was the result of petitioner's request that it be held at a federal institution, rather than at or near the point of his arrest on the parole violation warrant in Illinois. I agree that in cases in which the alleged parole violators make this choice, there is occasion for some delay not present in cases in which they choose "local" hearings. Time is needed by the authorities to select the appropriate correctional institu-

tion, and then to transport the parolee there. However, in referring to a "general rule" of three months' delay as a maximum, the court of appeals in *Hahn v. Revis* cited *Marchand v. Director, U. S. Probation Office*, 421 F.2d 331, 335, n. 5 (1st Cir. 1970). In the footnote in *Marchand*, in turn, decisions in three cases are cited, in each of which hearings at correctional institutions rather than local hearings were involved. Moreover, in the present case, petitioner was held in the county jail in Illinois for 42 days after FCI Oxford had been designated as the institution in which he was to be confined, and then for a day in transit and another 21 days in the penitentiary at Terre Haute. Obviously, the hearing at FCI Oxford could not be held earlier than the parole board hearing officers' next scheduled visit after petitioner's arrival there. That petitioner's arrival at Oxford occurred 64 days after the designation of Oxford is wholly the responsibility of governmental officials and not the petitioner.

There are factors present here which suggest that perhaps the release of the petitioner should not be ordered. These include: the seriousness of his conduct on June 27, 1975, as found by the parole board hearing officers; petitioner's declarations on July 21, 1975, and October 29, 1975, that he did not contest any of the six charges; petitioner's apparently tardy change of mind about desiring the assistance of counsel; the failure by petitioner and his counsel at the November 20 hearing to offer any defense on the merits or any statement in mitigation; the absence of a showing that petitioner was actually prejudiced by the delay; and the probability that revocation would have occurred even if the hearing had been held in August rather than November.

On the other hand: the 42 day confinement in the county jail in Illinois was egregious; in the opinion of a federal probation officer, petitioner was illiterate and prompt arrangements for counsel might have been

---

2. On the facts before it, the Court considered that it was the period of time from the date of the conviction in state court upon which the

federal parole violation warrant was based which was to be measured for the purposes of determining reasonableness.

appropriate; petitioner did contend on October 29, 1975, that he had not known what he was doing on June 27, 1975; there has never been a judicial determination of guilt of the crimes charged; and, in light of the case law concerning the effect of delay in parole revocation hearings, it was not an unreasonable tactic on the part of petitioner and his attorney to refrain from addressing the merits at the November 20, 1975, hearing before the examiners.

Faced with these competing considerations, I consider it decisive that although not so phrased, the rule expressed in *Hahn v. Revis* and endorsed in *Johnson v. Holley* appears to be a *per se*, prophylactic rule. That is, it appears that once a trial court has determined that an unreasonable delay has occurred after July 25, 1975, it follows that it is inadequate as a form of relief simply to afford a hearing and that the petitioner must be released from all confinement attributable to the issuance of the parole revocation warrant. This result appears to follow regardless whether the delay has actually prejudiced the position of the particular petitioner in the particular case. Prejudice is presumed.

I find and conclude that in fact in this case *no significant prejudice to the petitioner resulted from the delay.* I find and conclude that the delay between July 18, 1975, and November 20, 1975, was unreasonable.

It is hereby ordered that the petition herein is granted and that not later than noon on December 17, 1976, petitioner shall be released from any and all confinement resulting from the issuance of a parole revocation warrant on or about June 27, 1975.

### SUPPLEMENTAL OPINION

When I entered my opinion and order herein on November 17, 1976, I was unaware that on November 15, 1976 the Supreme Court of the United States had entered its decision in *Moody v. Daggett,* —— U.S. ——, 97 S.Ct. 274, 50 L.Ed.2d 236.

In light of *Moody v. Daggett,* I have reviewed my opinion and order of November 17, 1976, in which I relied principally upon *United States ex rel. Hahn v. Revis,* 520 F.2d 632 (7th Cir. 1975), and *Johnson v. Holley,* 528 F.2d 116 (7th Cir. 1975).

*Moody v. Daggett* involved a petitioner who had been sentenced to imprisonment by a federal court, been paroled, been convicted in a federal court of two offenses which occurred during parole, and been sentenced to another term of imprisonment. The Court held that it was permissible for the United States Parole Board to issue a parole violation warrant and to file it as a detainer at the institution at which the petitioner was serving the subsequently imposed sentence, but not to execute it, and to await petitioner's release from imprisonment under the later sentence before deciding whether to revoke the parole which had been granted under the earlier sentence.

In *Hahn v. Revis,* the offense committed by the petitioner while on federal parole was a state offense and upon his conviction he had been sentenced to a state prison, where the federal parole violation warrant had been filed as a detainer. Thus, the agency which would decide whether to grant him parole under the state sentence (presumably a state parole board) was not the same as the agency which would decide whether to revoke his parole under the earlier federal sentence (the United States Parole Board). In *Moody v. Daggett,* the Supreme Court expressly refrained from ruling on the implications of a case in which these two parole decisions would be exercised by different and autonomous parole authorities. However, it is fair to say that *Moody v. Daggett* casts grave doubt upon the continuing vitality of the holding in *Hahn v. Revis.*

But it was dictum in *Hahn v. Revis,* upon which I relied in my November 17, 1976 opinion and order in the present case: dictum to the effect that as a general rule three months is the maximum delay tolerated by courts between the date of the execution (not the issuance) of the federal parole violation warrant and the date of the revocation hearing. 520 F.2d 632, 638, n. 5. And I also relied upon dictum in *Johnson v.*

*Holley* to the effect that a lapse of four months from the time of execution of the federal parole violation warrant to the time of the parole revocation hearing would be unreasonable unless some substantial part of the delay were attributable to the parolee. 528 F.2d 116, 119.

Since in *Moody v. Daggett* the Court placed major stress upon the fact that there the petitioner's current confinement derived from his conviction of the intervening offenses and not from the unexecuted federal parole violation warrant, I conclude that it has no bearing upon the present case. I conclude, further, that the opinion and order entered herein November 19, 1976 requires no modification.